UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UDG MANAGEMENT, LLC, ED EDISON
CORP., UDG HOLDINGS, LLC, JEONG HOON
KIM, and EUN MEE BAEK,

                                    Plaintiffs,

                    -against-


IRONSHORE INDEMNITY CORP.,

                                    Defendant.

------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2026

24-CV-2777 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

On June 20, 2025, Defendant Ironshore Indemnity Corp. ("Ironshore") moved for

summary judgment.  Dkts. 68–71.  Plaintiffs UDG Management, LLC; ED Edison Corp.; UDG

Holdings, LLC; Jeong Hoon Kim; and Eun Mee Baek opposed,[1] Dkt. 87, and Defendant replied,

Dkts. 88–89.  Defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiffs are three related New Jersey and New York dental business entities; their

officer, Jeong Hoon Kim; and an employee of UDG Management, LLC, Eun Mee Baek.

Compl., Dkt. 1-1 at ¶¶ 1–5.  This case concerns whether Defendant, a New York insurance

company, is obligated to indemnify Plaintiffs for a damages award entered in an underlying

employment action against Plaintiffs.  *Id.* at ¶ 6.

---

[1]    Plaintiffs initially requested a briefing schedule allowing them to cross-move for summary judgment,
which the Court allowed.  Order, Dkt. 65; Order, Dkt. 86.  Plaintiffs, however, did not cross-move for summary
judgment.

## I.    The Policies

Defendant Ironshore issued two Employment Practices Insurance policies to some of the Plaintiffs.  Def.'s Mem. of Law in Supp. re: Mot. for Summ. J. ("Def.'s Mot."), Dkt. 69 at 1; Pls.' Mem. of Law in Opp'n re: Mot. for Summ. J. ("Pls.' Opp'n"), Dkt. 87 at 5; Statement of Undisputed Material Facts ("SOMF"), Dkt. 89 at ¶¶ 1–2.  Those policies were "claims-made" policies: they only covered claims first made against the insured party during the policy period.[2] Def.'s Mot. at 1; SOMF ¶¶ 6–7.  One policy covered the period from October 14, 2017, to October 14, 2018 ("2017 Policy"), and the second policy covered the period from October 26, 2018, to October 26, 2019 ("2018 Policy") (together, the "Policies").  Def.'s Mot. at 1; SOMF ¶¶ 1–2.  The insured party is UDG Management, LLC, and the policies covered: it; its directors, officers, and employees; its subsidiaries; and its subsidiaries' directors, officers, and employees. Def.'s Mot. at 2; SOMF ¶¶ 9–11.

The Policies required notice of a claim "as soon as practicable but in no event later than thirty (30) days after the end of the Policy Period."  Def.'s Mot. at 3; SOMF ¶¶ 6, 19–20 (citing the Policies' § VII(A)).  Notice was required "of any circumstances which may reasonably be expected to give rise to an Employment Practices Claim being made against an Insured."[3]  Def.'s Mot. at 3; SOMF ¶ 20.  The Policies also provided that if notice is given of a claim or if "any circumstances which may reasonably be expected to give rise to an Employment Practices Claim" exist, then any subsequent claim "arising out of, based upon or attributable to the prior

---

[2]    "Claims-made" policies differ from "occurrence-based" policies, which cover claims where the injury or damage occurred during the policy period, even if the claim was not made until after the policy period concluded. 13 Couch on Ins. § 186:13; 1 Insurance Claims and Disputes § 1:7 (6th ed.).

[3]    An Employment Practices Claim is "brought by or on behalf of any past, present or future Employee of the Company or an Outside Entity, or any applicant for employment with the Company or an Outside Entity alleging an Employment Practices Wrongful Act."  SOMF ¶ 15.  An Employment Practices Wrongful Act may include improper treatment of a whistleblower, retaliation, and wrongful termination.  *Id.* at ¶ 17.

noticed Claim or alleging any Related Employment Practices Wrongful Acts," shall be considered related to the prior claim for notice purposes. Def.'s Mot. at 3; SOMF ¶ 20 (citing the Policies' § VII(A–B)). Claims include "written demand[s] for monetary or non-monetary relief made against any Insured." Def.'s Mot. at 4; SOMF ¶ 16.

## II.    The Events

In December 2016, an independent contractor, Dr. Robert J. Kudla, DMD, entered into a contract with "United Dental Group Practice" ("UDG") to provide dental services for two years. Def.'s Mot. at 5; SOMF ¶ 33. In May 2017, five months prior to the commencement of coverage under the 2017 Policy, Dr. Kudla was terminated. Def.'s Mot. at 5; SOMF ¶ 37. In July 2017, he retained counsel to pursue claims against his former employer, supervisor, and various other personnel of his former employer. Def.'s Mot. at 5; SOMF ¶ 38.

On September 12, 2017, still prior to the commencement of coverage under the 2017 Policy, Dr. Kudla made a written demand. Def.'s Mot. at 6; SOMF ¶ 39. He alleged breach of contract and wrongful early termination due to retaliation for whistleblowing regarding health and safety concerns (collectively, the "Claims"). Def.'s Mot. at 6; SOMF ¶ 39. He sought to be paid out for the rest of his employment contract ($111,600) and to be compensated for the last two weeks he worked ($3,275.40). Def.'s Mot. at 6; SOMF ¶ 40. Additionally, he notified Plaintiffs that he planned to cash checks from UDG that he was holding ($6,314). Def.'s Mot. at 6; SOMF ¶ 41.

In November 2017, Dr. Kudla filed a demand for mediation of the Claims before JAMS, the alternative dispute resolution provider contemplated by his contract with UDG. Def.'s Mot. at 6; SOMF ¶ 44. He requested the same relief that he had requested in his earlier written demand. Def.'s Mot. at 6; SOMF ¶¶ 54–55. Mediation took place in February 2018, but the parties did not settle. Def.'s Mot. at 7; SOMF ¶¶ 50, 61. Despite the fact that the 2017 Policy

was in effect at the time of the demand for mediation, Plaintiffs did not provide notice of the demand or the ensuing mediation to Defendant.[4]  Def.'s Mot. at 7; SOMF ¶ 49.

In May 2018, Dr. Kudla filed an arbitration complaint based on the Claims with JAMS. Def.'s Mot. at 7–8; SOMF ¶¶ 62, 64.  Plaintiffs still did not provide notice to Defendant.  Def.'s Mot. at 8; SOMF ¶ 65.  The arbitration was dismissed 11 months later when JAMS determined that the employment contract required an American Arbitration Association arbitrator.  Def.'s Mot. at 8; SOMF ¶ 64.

On April 12, 2019, Dr. Kudla filed the underlying action based on the Claims.  Def.'s Mot. at 8; SOMF ¶¶ 66–70.  On May 30, 2019, UDG Management, LLC finally provided notice to Ironshore.  Def.'s Mot. at 8; Pls.' Opp'n at 7; SOMF ¶ 71.  After reviewing the complaint, Ironshore denied coverage because notice was not timely under the 2017 Policy, and the Claims predated the 2018 Policy.  Def.'s Mot. at 8–9; SOMF ¶¶ 71–77.  Settlement discussions were unsuccessful, and the underlying action proceeded to trial.  Def.'s Mot. at 9–10; SOMF ¶¶ 79–83, 88.  Dr. Kudla was awarded $390,794 in economic damages, $275,000 for emotional distress, $300,000 in punitive damages, and $2,238,459.28 in legal fees payable to his counsel, plus interest.  Def.'s Mot. at 10–11; SOMF ¶¶ 95–96.

This action was filed in state court in March 2024 and removed in April 2024. Comp., Dkt. 1-1; Notice of Removal, Dkt. 1.  Only Plaintiffs' claim for declaratory judgment as to breach of contract remains.[5]

---

[4]    It is possible that Plaintiffs failed to provide notice of the demand because they knew that the Claims arose before the Policies went into effect and, therefore, were not covered.

[5]    Plaintiffs' breach of fiduciary duty claim was dismissed in August 2024.  Order, Dkt. 34; *see also* Def.'s Mem. of Law in Supp. re: Def.'s Mot. for Partial Dismissal of Compl., Dkt. 8.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment may be awarded if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986); *Dish Network Corp. v. Ace American Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021). The party seeking summary judgment has the burden of showing that there is no genuine factual dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "The non-moving party must produce evidence in the record and 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.'" *Judge v. Henderson*, 172 F. Supp. 2d 410, 411 (S.D.N.Y. 2001) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d. Cir. 1993)).

### II.    Insurance Coverage

In coverage disputes, the policyholder bears the initial burden of showing that the insurance contract may cover the loss. *Jakobson Shipyard, Inc. v. Aetna Casualty & Surety Co.*, 775 F. Supp. 606, 609 (S.D.N.Y. 1991); *see also Tindall Corp. v. Berkley Assur. Co.*, 22-CV-745 (JLS) (MJR), 2025 WL 677028, at *11 (W.D.N.Y. Feb. 21, 2025) ("The insured party must demonstrate the existence of coverage and the satisfaction of all conditions precedent, including the timeliness of notice."). New York Insurance Law § 3420(a)(5) allows claims-made policies to provide definite time frames for reporting claims, irrespective of prejudice.[6] *Certain Underwriters at Lloyd's London Subscribing to Pol'y No. PGIARK01449-05 v. Advance Transit Co.*, 188 A.D.3d 523, 523–524 (1st Dep't 2020).

---

[6]    This differs from the law governing occurrence-based policies. For occurrence-based policies, under New York Insurance Law § 3420(c)(2)(A)(i), if notice is provided within two years of the time required under the policy, the burden is on the insurer to demonstrate that it has been prejudiced by the late notice. Prejudice requires that the late notice "materially impairs the ability of the insurer to investigate or defend the claim." N.Y. Insur. L. § 3420(c)(2)(C). Plaintiffs focus on that standard in their papers even though it is not applicable.

**DISCUSSION**

Defendant argues that there are multiple grounds on which the Court could rule in its favor. First, UDG Holdings, LLC is not an insured party under the policies. Def.'s Mot. at 12–13. Second, the February 2018 mediation, the May 2018 arbitration, and April 2019 underlying action all relate back to the September 2017 demand, which predated coverage; they are not separate claims. *Id.* at 14–19. Third, even if the Claims were made during the policy period, they were not timely reported to Ironshore, and Ironshore was prejudiced as a result. *Id.* at 19–23. Defendant asserts that reasonable settlement opportunities were lost, and Ironshore was denied the opportunity to investigate and defend the Claims "until it was too late." *Id.* at 2. Fourth, the Policies contain certain exclusions that preclude coverage for the Claims. *Id.* at 23–26.

Plaintiffs paint this instead as a refusal to investigate, defend, or indemnify the suit. Pls.' Opp'n at 4, 7. They describe the May 2018 arbitration as "null and void and effectively abandoned," and argue that a void matter is not an operative event and cannot serve as a basis for alleged prejudice. *Id.* at 6, 8. Plaintiffs assert that the requirement to provide notice was not triggered until the underlying lawsuit was filed on April 12, 2019. *Id.* at 6. Plaintiffs assert that they are not bound by the notice requirement contained in the policy and that Defendant is only entitled to reasonable notice under New York Insurance Law. *Id.* at 10–11. They further argue that Defendant cannot demonstrate prejudice. *Id.* at 7–12.

Plaintiffs have not met their burden to demonstrate coverage under the Policy.[7] Plaintiffs admit all material facts in Ironshore's 56.1 Statement except two paragraphs pertaining to

---

[7] Although the Court is aware of the medical difficulties of Plaintiffs' counsel, Plaintiffs had more than five months to respond to Defendant's Motion, including by hiring new counsel, if appropriate. Plaintiffs' papers, nonetheless, do not respond to various arguments in Defendant's papers and give the appearance of a lack of diligence, as they contain numerous typos. For example, they reference the fiduciary duty claim that this Court has already dismissed. Pls.' Opp'n at 12; Def.'s Reply at 10 n.3. Plaintiffs' papers also, as Defendant points out, rely

Dr. Kudla's conduct. *See* Def.'s Reply Mem. of Law in Supp. re: Mot. for Summ. J. ("Def.'s Reply"), Dkt. 88 at 3; SOMF ¶¶ 60–61. Thus, there is no dispute that the Claims were made in September 2017, prior to the inception of the Policies. Dr. Kudla's demand in September 2017 was a claim as defined by the Policies because it was a written request for relief. SOMF ¶ 16. It was made against Plaintiffs for Plaintiffs' actions. *Id.* at ¶¶ 39, 88–93. Thus, the timing of the Claims is dispositive. Because the Claims were made before Plaintiffs had coverage, there is no coverage for the Claims.

The mediation, arbitration, and underlying action all arise from the same nucleus of facts that gave rise to the initial demand. *See id.* at ¶ 18. If there were any doubt about that, it would be erased by the factual similarities, down to the fact that the amount demanded in the initial written demand and the mediation were the same. *Id.* at ¶ 54. All of the various claims resolution procedures involved the same operative facts. *See id.* at ¶¶ 39, 44, 52–56, 62, 70. Plaintiffs do not contest those facts and, thus, concede them. *See* Pls.' Opp'n; Def.'s Reply at 4; *Scott v. JPMorgan Chase & Co.*, No. 13-CV-646 (KPF), 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014), *aff'd*, 603 F. App'x 33 (2d Cir. 2015) (collecting cases supporting the proposition that a party is deemed to have conceded an argument that it fails to address in its briefing).

Plaintiffs' late notice arguments do not raise an issue of fact or law. The law regarding prejudice cited by Plaintiffs is inapplicable because the Policies at issue are claims-made policies. Defendant can and did set a deadline for notice that was not met by Plaintiffs.[8] The analysis can end there.

---

on the Complaint and not the 56.1 Statement for relevant factual assertions. *See* Def.'s Reply at 3 (citing *Celotex Corp.*, 477 U.S. at 324).

[8]    It would not change the analysis or outcome here, but the Court notes that Plaintiffs have cited no reason for the delay (of approximately 20 months from the initial demand to the actual notice) in notifying Defendant.

Even were prejudice relevant, it would further tip the scales in favor of Defendant. Plaintiffs dispute that Defendant was prejudiced but acknowledge the heart of the issue: Ironshore could have resolved the case for a much lower cost if it had been settled earlier. Pls.' Opp'n at 10. Plaintiffs cite Defendant's claims adjuster's deposition testimony addressing prejudice: "Ironshore was not provided an opportunity to adequately investigate the allegations and attempt to resolve to the extent coverage would have been available." *Id.* (citing Dep. Tr., Dkt. 87-3 at 23). If, as the claims adjuster also asserted, *see* Dep. Tr., Dkt. 87-3 at 11–12, Ironshore had been notified earlier, it could have participated in the mediation and arbitration.[9] Perhaps most importantly, Ironshore could have participated in the settlement discussions that occurred along the way during which Dr. Kudla's demand increased fourfold (but was still a fraction of his ultimate recovery). *Id.*; SOMF ¶¶ 55, 79–82, 95–96. Ironshore also could not "participate in the analysis and assertion of the legal positions taken" or "consider claims against other potentially responsible parties that should have been investigated." Def.'s Reply at 9. Although legally irrelevant, Defendant has shown prejudice from the late notice. *See, e.g.*, *Atos Syntel Inc. v. Ironshore Indem. Inc.*, 21-CV-1576 (JGK), 2024 WL 4227709, at *8 (S.D.N.Y. Sept. 17, 2024) (granting the motion for summary judgment based on the insured party's failure to comply with the unambiguous notice-of-claim provision in the policy, but "[f]or purposes of completeness," also finding prejudice to the insurer based on a lack of timely notice).

The Court need not consider the other grounds argued by Defendant, such as (1) whether UDG Holdings, LLC is an insured party under the policies, Def.'s Mot. at 12–13, or (2) whether the policy exclusions would exclude this loss, *id.* at 23–26.

---

[9] Plaintiffs argue that the arbitration demand did not trigger the notice requirement because the arbitration was later deemed void. A claim, however, is triggered when a demand is made regardless of the outcome. *See Quanta Lines Ins. Co. v. Investors Capital Corp.*, 06-CV-4624 (PKL), 2009 WL 4884096, at *12 (S.D.N.Y. Dec. 17, 2009).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment at Dkt. 68 is

GRANTED, and Plaintiffs' claim for declaratory judgment as to breach of contract is

DISMISSED with prejudice.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Date:  March 26, 2026**
      **New York, New York**

_____
      **VALERIE CAPRONI**
      **United States District Judge**

9